FILED

04/17/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0687

DA 16-0687

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 94

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　v.

DAVID MICHAEL ZIMMERMAN,

　　　　Defendant and Appellant.

APPEAL FROM:　District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2015-211
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Greg Beebe, Beebe Law Firm, Helena, Montana

　　　　For Appellee:

　　　　　　Timothy C. Fox, Montana Attorney General, Madison L. Mattioli, Assistant
Attorney General, Helena, Montana

　　　　　　Leo J. Gallagher, Lewis and Clark County Attorney, Jeff Sealey, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:　January 24, 2018

Decided:　April 17, 2018

Filed:

_____
　　　　　　　　　　Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Defendant David Michael Zimmerman ("Zimmerman") appeals the denials of his motion to suppress and motion in limine and the grant of the State's motion in limine by the First Judicial District Court, Lewis and Clark County. We address:

> *Issue One:  Whether the District Court erred by denying Zimmerman's motion to suppress the standard field sobriety test results on the basis that the arresting officer lacked particularized suspicion to administer them.*
>
> *Issue Two:  Whether the District Court erred by granting the State's motion in limine to preclude Zimmerman from introducing or referencing the arresting officer's previous police reports for purposes of impeachment.*
>
> *Issue Three:   Whether the District Court erred by allowing evidence of Zimmerman's prior DUIs to establish the offense of Aggravated DUI.*

¶2    We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    At approximately 10:00 p.m. on June 16, 2015, while traveling northbound on North Montana Avenue in Helena, Montana, Highway Patrol Trooper Jeremy Lee ("Lee") clocked Zimmerman traveling southbound at 60 miles-per-hour where the speed limit changes from 50 to 35 miles per hour. Lee made a U-turn and stopped Zimmerman for speeding.  Once Lee observed several indicators of intoxication after asking for Zimmerman's license, registration, and proof of insurance, the traffic stop ripened into a DUI investigation. Lee's report and testimony stated:  Zimmerman's breath smelled of alcohol; his eyes were "pie-eyed," bloodshot, and watery; his movement was slow and

2

labored; and his speech was slurred. Lee asked Zimmerman to perform standardized field sobriety tests, which Lee concluded indicated that Zimmerman was intoxicated. Lee cited Zimmerman for speeding and arrested him on suspicion of DUI. Zimmerman refused a preliminary breath test at the scene, but he later consented to a blood test. The blood test indicated Zimmerman had a 0.088 blood alcohol content ("BAC").

¶4 On June 17, 2015, the State charged Zimmerman with DUI, fourth or subsequent offense, in violation of § 61-8-401(1)(a), MCA. On June 16, 2016, the State filed a Second Amended Information, charging Zimmerman with: Count I—Aggravated DUI, a felony, in violation of § 61-8-465(1)(e), MCA; or, in the alternative, Count II—Aggravated DUI per se (0.08 or higher BAC), a felony, in violation of § 61-8-465(1)(e), MCA.

¶5 On November 17, 2015, Zimmerman moved for discovery of Lee's other police reports, and the District Court ordered the State to make available Lee's reports that involved DUI arrests and investigations for six months before and six months after Zimmerman's June 15, 2015 arrest.

¶6 On December 23, 2015, Zimmerman filed a motion to suppress field sobriety tests based on newly discovered evidence in twenty-nine DUI reports generated by Lee between January 18, 2015, and December 5, 2015. Zimmerman argued that Lee's reports, which provided the basis for particularized suspicion for all his DUI investigations, contained nearly identical language, including the same typographical errors. Zimmerman asserted these indistinguishable reports called into question whether Lee made accurate individualized reports of his traffic stops and whether he possessed sufficient particularized suspicion to investigate Zimmerman for DUI in this case.

3

¶7   At the suppression hearing on February 9, 2016, Lee explained his report-writing process in which he cuts and pastes previous reports and amends the reports while reviewing the video of the stop, deleting irrelevant information, and adding observations cued from the video and his memory. Lee testified his reports contain nearly identical language because DUI investigations themselves are similar in both indications of DUI and the process of the stop. He denied fabricating any observations, insisted the report regarding Zimmerman was accurate, and stated that his cut-and-paste report-writing technique saves time. Lee acknowledged making a mistake in a previous DUI report in which he reported the suspect's Vertical Gaze Nystagmus ("VGN") test indicated the suspect was intoxicated, but video evidence showed Lee did not even administer the VGN test.

¶8   The District Court denied Zimmerman's motions to suppress. Addressing Zimmerman's assertion that Lee's cut-and-paste method of preparing reports indicated he falsely created the report regarding Zimmerman, the District Court reasoned that "to accept Zimmerman's argument, the Court must conclude that Lee is not credible." The District Court concluded that Lee had sufficient particularized suspicion to investigate Zimmerman for DUI.

¶9   On June 22, 2016, Zimmerman filed a motion in limine pursuant to M. R. Evid. 403, requesting exclusion of his prior DUI convictions, which were the predicate offenses to the charge of Aggravated DUI. On the first day of trial the parties argued the motion in limine and jury instructions related to the prior DUI evidence. Zimmerman argued that if the jury heard evidence of his prior DUI convictions, the prejudice would be insurmountable.

4

Zimmerman offered to stipulate to and requested the District Court take judicial notice of the prior DUI convictions to mitigate this prejudice.

¶10 The State argued that Zimmerman's prior DUI convictions were admissible because the convictions were an element of Aggravated DUI pursuant to § 61-8-465(1), MCA, which the State was required to prove beyond a reasonable doubt.

¶11 The District Court denied Zimmerman's motion in limine and allowed the State to use evidence of Zimmerman's prior DUI convictions, stating: "That's exactly the nature of the [Aggravated DUI] offense, someone who has engaged in repeat behavior violating the DUI laws. And so it seems like everything is on the table under that scenario. . . . The State is entitled to show those elements in full." The District Court read the jury a limiting instruction that stated, in part: "That evidence [of prior DUI convictions] was not admitted to prove the character of [the Defendant] or to show he acted in conformity with that character." The jury returned a guilty verdict.

¶12 The District Court sentenced Zimmerman to the Montana Department of Corrections ("DOC") for thirteen months followed by a four-year DOC-suspended sentence with conditions. Zimmerman timely appeals.

## STANDARDS OF REVIEW

¶13 We review a district court's evidentiary rulings for an abuse of discretion. *State v. Meyer*, 2017 MT 124, ¶ 12, 387 Mont. 422, 396 P.3d 1265 (citing *State v. Jenkins*, 2011 MT 287, ¶ 4, 362 Mont. 481, 265 P.3d 643). An abuse of discretion occurs when the district court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Price*, 2006 MT 79, ¶ 17,

331 Mont. 502, 134 P.3d 45. Although a district court possesses broad discretion to determine the admissibility of evidence, judicial discretion must be guided by the Rules of Evidence, applicable statutes, and principles of law. *Maier v. Wilson*, 2017 MT 316, ¶ 17, 390 Mont. 43, 409 P.3d 878 (citing *Price*, ¶ 17). To the extent that a discretionary ruling is based on a conclusion of law, our review is plenary. *Maier*, ¶ 17. Further, we determine whether the court's underlying findings of fact are clearly erroneous, which occurs if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been committed. *State v. Murray*, 2011 MT 10, ¶ 11, 359 Mont. 123, 247 P.3d 721. An erroneous evidentiary ruling constitutes reversible error when a substantial right of the party is affected. M. R. Evid. 103.

## DISCUSSION

¶14     *Issue One: Whether the District Court erred by denying Zimmerman's motion to suppress the standard field sobriety test results on the basis that the arresting officer lacked particularized suspicion to administer them.*

¶15     The Fourth Amendment to the U.S. Constitution and Article II, Section 11 of the Montana Constitution protect a person against unreasonable searches and seizures, which includes brief investigatory stops such as traffic stops and DUI investigations. *State v. Elison*, 2000 MT 288, ¶ 15, 302 Mont. 228, 14 P.3d 456. An officer may stop any person "that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401, MCA. "A statutory violation alone is sufficient to establish

particularized suspicion for an officer to make a traffic stop." *Kummerfeldt v. State*, 2015 MT 109, ¶ 11, 378 Mont. 522, 347 P.3d 1233.

¶16 The particularized suspicion necessary to justify an initial investigatory stop may, but does not automatically, extend to the particularized suspicion required for an alternative investigation into another offense. *Hulse v. Dep't of Justice, Motor Vehicle Div.*, 1998 MT 108, ¶¶ 39–42, 289 Mont. 1, 961 P.2d 75. Therefore, before an officer may investigate DUI after a traffic stop and administer field sobriety tests or breath tests for BAC, the officer must have a separate "particularized suspicion that the person was driving or in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol or in violation of 61-8-410 or 61-8-465." Section 61-8-409(1), MCA; *see also State v. Toth*, 2003 MT 208, ¶ 12, 317 Mont. 55, 75 P.3d 323.

¶17 The State must show the officer had particularized suspicion to justify an investigatory stop, defined as: (1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *Elison*, ¶¶ 15–16. Whether particularized suspicion exists at the time of an investigatory stop is a question of fact determined by the totality of the circumstances, and "a court should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *State v. Pratt*, 286 Mont. 156, 161, 951 P.2d 37, 40 (1997), *quoted in Elison*, ¶ 16. If the officer lacked particularized suspicion, and no other exceptions to the warrant requirement apply, the search and seizure is unconstitutional and all evidence emanating

from the illegal testing must be suppressed. *Bramble v. State*, 1999 MT 132, ¶¶ 23–24, 294 Mont. 501, 982 P.2d 464.

¶18 Zimmerman argues that because Lee's report regarding Zimmerman was simply cut and pasted from previous reports, it lacked individualized observations of Zimmerman's behavior. Further, Zimmerman argues that because Lee's reports of twenty-nine other DUI stops reflect identical, or nearly identical, language about suspect behavior, the report is untruthful and inaccurate. Such a discredited report, Zimmerman asserts, cannot support reasonable grounds upon which to base the requisite particularized suspicion needed to justify Lee's investigation of Zimmerman for DUI.

¶19 In denying Zimmerman's motion to suppress, the District Court noted "the major flaw in Zimmerman's attack on Lee's report writing is that these reports all concern persons who were intoxicated, . . . demonstrat[ing] similar effects of alcohol intoxication, such as odor of alcohol, watery or bloodshot eyes, slurred speech, and slow or labored movements." Thus, the District Court held that it "cannot conclude that Lee's identical or similar descriptions of persons exhibiting these physical indications are indicative that Lee is misleading in his reports." There is no question that Lee had the requisite suspicion to initiate the traffic stop based on Lee's speed limit violation. When Lee engaged Zimmerman during the traffic stop, Lee observed indications that led him to believe Zimmerman may be intoxicated; this prompted Lee to investigate Zimmerman for DUI. *Hulse*, ¶¶ 40–42.

¶20 Lee's observations detailed in his report and the video of the stop that objectively documents Lee's observation that Zimmerman smelled of alcohol, establish that Lee had

8

articulable facts and a resulting particularized suspicion to justify his investigation of Zimmerman for DUI. *Hulse*, ¶ 42. During the hearing on the motions to suppress, the District Court considered Lee's testimony and the video of the stop, and found Lee credible. The District Court rejected Zimmerman's argument that Lee's reports must be fabricated because of the lack of individualized reporting. The District Court's findings of fact were not clearly erroneous and its interpretation and application of the law was correct. *See State v. Nixon*, 2012 MT 316, ¶ 21, 367 Mont. 495, 291 P.3d 1154 ("The weight of evidence and the credibility of witnesses are exclusively within the province of the trier of fact, and we will not reweigh the evidence or the credibility of witnesses."). Thus, the District Court did not err by denying Zimmerman's motion to suppress.

¶21 *Issue Two: Whether the District Court erred by granting the State's motion in limine to preclude Zimmerman from introducing or referencing the arresting officer's previous police reports for purposes of impeachment.*

¶22 Defendants are guaranteed the right to due process and a fair trial, which includes the right to confront adverse witnesses under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article II, Sections 17 and 24 of the Montana Constitution. *State v. Porter*, 2018 MT 16, ¶ 17, 390 Mont. 174, 410 P.3d 955. Generally, under M. R. Evid. 402, "all relevant evidence is admissible," which is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," M. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

9

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M. R. Evid. 403.

¶23 If evidence bears upon the credibility of a witness, that evidence is relevant for impeachment purposes. M. R. Evid. 401; *see also State v. Weisbarth*, 2016 MT 214, ¶ 21, 384 Mont. 424, 378 P.3d 1195. "The jury . . . is the exclusive judge of a witness's credibility," § 26-1-302, MCA, and as such, is "entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony," *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 469 (1984). The credibility of a witness may be attacked by any party. M. R. Evid. 607. A party may controvert a witness's truthfulness "by any matter that has a tendency to disprove the truthfulness of a witness's testimony" including, but not limited to "inconsistent statements of the witness" and "other evidence contradicting the witness's testimony." Section 26-1-302, MCA. "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may not be proved by extrinsic evidence." M. R. Evid. 608(b). Although in the discretion of the court, specific instances of conduct may be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness if the evidence is probative of truthfulness or untruthfulness. M. R. Evid. 608(b).

¶24 The State argued that Zimmerman should be precluded from introducing or referencing Lee's other DUI reports because: (a) the reports were not relevant to his case pursuant to M. R. Evid. 401 and 402; (b) the reports would confuse the jury or be an undue delay and waste of time pursuant to M. R. Evid. 403; and (c) the reports are extrinsic

evidence, which Zimmerman cannot use to attack Lee's credibility pursuant to M. R. Evid. 608.

¶25 Zimmerman maintains Lee's reports are both relevant and admissible to attack Lee's credibility under M. R. Evid. 401, 402, and 608(b) because the fact that Lee admittedly cuts and pastes his reports and verified at least one mistake regarding another suspect who was not given a test—even though Lee reported that suspect failed that test—was relevant to Lee's credibility and truthfulness. We agree.

¶26 When denying Zimmerman's motion to suppress, the District Court noted: "To a large degree, for the Court to accept Zimmerman's argument, the Court must conclude that Lee is not credible." Thus, the District Court obviously recognized that Zimmerman sought to use Lee's other DUI reports to challenge his credibility. The District Court was within its discretion to reject this challenge for purposes of the motion to suppress. However, when granting the State's motion in limine, the District Court's conclusion that Zimmerman's challenge to Lee's credibility was inadmissible because the challenge was being made with extrinsic evidence failed to acknowledge the pertinent exception of M. R. Evid. 608(b), which provides that specific instances of conduct may be inquired into on cross-examination concerning the witness's character for truthfulness or untruthfulness if the evidence is probative of such. Further, the District Court made a factual finding that, because Lee's reports resulted in the other suspects being found guilty of DUI, the evidence of Lee's prior DUI reports were not relevant, and precluded under M. R. Evid. 402. The District Court then added that Zimmerman's examination into Lee's reports had a

11

substantial possibility of confusing the jury and causing undue delay contrary to M. R. Evid. 403.

¶27 Zimmerman sought to challenge Lee's credibility by questioning Lee's cut-and-paste reporting techniques that led to at least one mistake in which Lee reported the suspect failed a test Lee never administered. As such, the way in which Lee documents his stops is relevant to whether he is generating accurate reports regarding his observations of DUI suspects, M. R. Evid. 402, and appropriately admissible for impeachment purposes to challenge Lee's character for truthfulness, M. R. Evid. 608(b). Nothing in the Rules of Evidence provides that testimony admissible for one purpose and inadmissible for another is thereby rendered inadmissible. *Abel*, 469 U.S. at 56, 105 S. Ct. at 471. To the contrary: "It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar." *Abel*, 469 U.S. at 56, 105 S. Ct. at 471.

¶28 The District Court recognized the crux of Zimmerman's defense was to impeach Lee's credibility, and it should have allowed Zimmerman to use Lee's reports to challenge his credibility in front of the jury. *See* § 26-1-302, MCA (providing "[t]he jury . . . is the exclusive judge of a witness's credibility" and a party may controvert a witness's truthfulness "by any matter that has a tendency to disprove the truthfulness of a witness's testimony" including, but not limited to "inconsistent statements of the witness" and "other evidence contradicting the witness's testimony."); *see also Abel*, 469 U.S. at 52, 105 S. Ct. at 457 (stating "the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth

of a witness' testimony."). Although Lee's explanation for his cut-and-paste method as a function of expediency was certainly plausible, it was for the jury to assess that plausibility. Regarding whether the presentation of Lee's reports would devolve into a chapter and verse recitation of twenty-nine DUI investigations and cause undue delay, the District Court has the power to place appropriate parameters on Zimmerman's cross-examination of Lee, and limit it to what is necessary to present Zimmerman's theory that Lee's reports are not accurate, truthful reflections of his stops. The District Court abused its discretion by granting the State's motion in limine and preventing Zimmerman from challenging Lee's credibility in front of the jury.

¶29 *Issue Three: Whether the District Court erred by allowing evidence of Zimmerman's prior DUIs to establish the offense of Aggravated DUI.*

¶30 Evidence of other crimes, wrongs, or acts is inadmissible as a general rule in Montana, M. R. Evid. 404(b), 403, and 609, and such evidence may not be admitted to prove a person's character and show that he or she acted in conformity with that character on a particular occasion, M. R. Evid. 404. *State v. Franks*, 2014 MT 273, ¶ 14, 376 Mont. 431, 335 P.3d 725. However, evidence of other crimes may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b). Rather than prohibiting the admission of evidence, M. R. Evid. 404(b) prohibits a theory of admissibility. *Franks*, ¶ 14 (citing *State v. Dist. Ct. of the Eighteenth Judicial Dist.*, 2010 MT 263, ¶ 47, 358 Mont. 325, 246 P.3d 415). "Evidence of prior crimes is inadmissible if offered for a purpose that requires the inference from bad act to bad person to guilty person, but may be

13

admissible if it proves a material issue without requiring any inference to the defendant's criminal disposition." *Franks*, ¶ 14 (internal citations and quotations omitted).

¶31 Regardless of the purpose for which the evidence is admitted, evidence of other crimes may unduly prejudice the jury against the defendant. *Franks*, ¶ 15 (citing *State v. Sage*, 2010 MT 156, ¶ 36, 357 Mont. 99, 235 P.3d 1284); *Meyer*, ¶ 24 ("Undoubtedly the admission of the [prior DUI] evidence was prejudicial."). Evidence offered for a valid purpose under M. R. Evid. 404(b) is still subject to the balancing test prescribed by M. R. Evid. 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Franks*, ¶ 15 (citing *State v. Stewart*, 2012 MT 317, ¶ 67, 367 Mont. 503, 291 P.3d 1187). Unfair prejudice may arise from evidence that provokes the jury's hostility or sympathy for one side, confuses or misleads the jury, or unduly distracts the jury from the main issues. *Franks*, ¶ 16 (citing *State v. Bieber*, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444).

¶32 Zimmerman argues the State capitalized on his prior DUI convictions throughout the trial by forcing Zimmerman to testify about their circumstances and, therefore, he was prejudiced. *See State v. Bingman*, 2002 MT 350, ¶ 37, 313 Mont. 376, 61 P.3d 153 ("[M. R. Evid. 609 "prohibits the admission of evidence that a witness has been convicted of a crime for the purpose of attacking that witness's credibility."). The State counters it simply presented Zimmerman's driving record that indicated his prior convictions and the dates as this Court determined was acceptable in *Meyer*. *See Meyer*, ¶ 24.

¶33 In *State v. Meyer*, Meyer was charged and convicted of Aggravated DUI based on the same aggravating factors that formed the basis for the charge against Zimmerman (prior

14

DUI convictions under § 61-8-465(1)(e), MCA). *Meyer*, ¶ 3. Meyer filed a motion in limine seeking to exclude evidence of any prior convictions under M. R. Evid. 403 and 404, contending that the evidence of his prior convictions was more prejudicial than probative. *Meyer*, ¶ 4. At the trial court, Meyer argued that his prior DUI offenses were not an element of the crime of Aggravated DUI, but were relevant only as a "penalty provision." *Meyer*, ¶ 7. Meyer offered to stipulate to his prior DUI convictions for "sentencing purposes" if the jury did not hear about them. *Meyer*, ¶¶ 16–17. The justice court rejected this argument, holding that conviction of a prior DUI is an element of the charge of Aggravated DUI, which the State had the burden to prove at trial. *Meyer*, ¶ 5. The district court, conducting appellate review of the justice court's ruling, agreed, holding that "Meyer's offer to stipulate to the prior convictions at sentencing failed to address the issue that the Aggravated DUI statute requires the jury to find that there were prior DUI convictions in order to convict Meyer of the charged offense." *Meyer*, ¶ 8.

¶34 We affirmed. While noting that admission of Meyer's prior DUIs was undoubtedly prejudicial, we held that it was not erroneously admitted because "[p]roof of the prior DUI was required as an element of the offense of Aggravated DUI. Indeed, the evidence contributed to the conviction because it established a statutory element required for a conviction." *Meyer*, ¶ 24.

¶35 The State relies exclusively on our holding in *Meyer* in support of its contention that evidence of Zimmerman's prior DUIs was properly admitted to establish a necessary element of the charge of Aggravated DUI. However, *Meyer* is distinguishable from the present case in one critical respect. Although at the trial court, *Meyer* argued similar

15

evidentiary bases for exclusion of his prior DUI convictions, they were framed within the context of the prior DUI convictions being "relevant only as a 'penalty provision' [that] did not need to be proven at trial." *Meyer*, ¶ 7. Thus, dispositive to our ruling on appeal was whether "Meyer's offer to stipulate to the prior convictions *at sentencing* failed to address the issue that the Aggravated DUI statute requires the jury to find that there were prior DUI convictions in order to convict Meyer of the charged offense." *Meyer*, ¶ 8 (emphasis added). We affirmed on that basis. *Meyer*, ¶ 24.

¶36 Unlike Meyer, Zimmerman did not offer to stipulate to his prior DUI offenses merely for sentencing purposes. Zimmerman acknowledged that his prior DUI convictions were an element of the crime. However, in order to mitigate the unquestionable prejudice of this evidence, Zimmerman offered to stipulate to his prior convictions *as an element of the offense*, to obviate the need to introduce this evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. While there is no question that the fact of Zimmerman's prior convictions was of consequence to determining whether he was guilty of Aggravated DUI, the existence of that fact was uncontested. With the *fact* of the prior DUIs being stipulated to, the *evidence* of the prior DUIs would not tend to make the existence of that fact any more or less probable. Zimmerman proposed to the District Court that the jury receive the standard DUI instruction, and he would "stipulate to the fact that he has a prior DUI conviction under [the Aggravated DUI] statute." Thus, Zimmerman's stipulation would

16

have established this necessary element of Aggravated DUI without incurring the prejudice of the jury being advised of the prior convictions.

¶37 In opposing Zimmerman's offer to stipulate to the predicate offenses, the State argued at trial that one of the purposes of the Aggravated DUI statute is to allow the jury to use the prior DUI offenses "for other purposes than just to satisfy an element." Specifically, the State argued that one reason that the Legislature made prior offenses an element of the crime, was "so that the jury understood that this is a person who is familiar with the process and is still doing it." The District Court agreed, noting that when "someone who has engaged in repeat behavior violating the DUI laws . . . it seems like everything is on the table under that scenario." We disagree.

¶38 Under the Aggravated DUI statute, a defendant is subject to increased minimum and maximum penalties when he or she is convicted of one of the underlying DUI statutes, and there is also present one of several different aggravating factors. Section 61-8-465(1)(a)–(e), (2)(a)–(b), MCA. Although a prior DUI conviction is indeed one of these aggravating factors, other aggravating factors are not dependent at all on the defendant having been previously convicted of a DUI. For example, a defendant who has never been charged with, much less convicted of, a prior DUI may nevertheless be convicted of Aggravated DUI if the defendant's BAC at the time of the present offense is at or above 0.16%. Section 61-8-465(1)(a), MCA. A defendant who refuses a breath test under § 61-8-402, MCA, may be convicted of Aggravated DUI if he or she had refused a breath test in the previous ten years, whether or not he or she had ever been convicted of a prior DUI. Section 61-8-465(1)(d), MCA. Although these aggravating factors are elements of the offense of

17

Aggravated DUI that must be proven in order to subject the defendant to the increased penalties of this crime, they do not abrogate a defendant's right to be tried on the merits of the charge for which he is being prosecuted, without injecting undue prejudice into the proceedings if that prejudice can be avoided. In this case, the prejudice could have been avoided by means of Zimmerman's stipulation. The District Court thus erred when it denied Zimmerman's motion in limine, and allowed the evidence of his prior DUI convictions to be presented to the jury.[1]

## CONCLUSION

¶39 The District Court did not err by denying Zimmerman's motion to suppress. The District Court abused its discretion by granting the State's motion in limine regarding the use of the arresting officer's other police reports and by denying Zimmerman's motion in

---

[1] On appeal, Zimmerman also argues that bifurcation would be an appropriate procedure to mitigate the prejudice of introducing prior convictions. Zimmerman posits that the trial could be bifurcated so that any prejudicial evidence of his prior DUIs would not be presented to, or considered by, the jury unless and until the jury first determined that Zimmerman was guilty of the presently charged DUI. Zimmerman cites other jurisdictions that provide a procedural remedy to alleviate the prejudicial affect resulting from the jury hearing of a defendant's prior DUI conviction while on trial for offenses similar to our Aggravated DUI statute. *See e.g. Ostlund v. State*, 51 P.3d 938, 941–42 (Alaska Ct. App. 2002) ("[T]he majority of jurisdictions considering this issue have created procedures for the trial court to try the felony [DUI] without the jury being informed of the prior convictions during its consideration of the current [DUI] offense."); *Banks v. State*, 125 S.W.3d 147, 152 (Ark. 2003) ("even though the prior offense is an element that must be proven, it is an element properly proven during the sentencing phase of a bifurcated proceeding. . . .") (following *Peters v. State*, 692 S.W.2d 243, 245 (Ark. 1985)); *State v. Wiggins*, 536 P.2d 1116, 1118 (Idaho 1975) (approving use of a bifurcated trial); *State v. Rodriguez*, 575 So. 2d 1262, 1266 (Fla. 1991), modified in part by *State v. Harbaugh*, 754 So. 2d 691, 694 (Fla. 2000) (requiring a bifurcated trial). Although this may also provide a workable solution, Zimmerman did not present this as an alternative solution to the District Court. Moreover, because we have resolved this issue on the District Court's erroneous denial of Zimmerman's motion in limine for the reasons discussed above, we need not, and do not, address the merits of this argument.

18

limine regarding the introduction into evidence of his prior DUI convictions. We reverse and remand to the District Court for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER